IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **DANIEL FERNANDEZ TARDY,** by himself and as member of of the conjugal partnership of which he is a member together with Mrs. Viviana Blanco Torres, **VIVIANA BLANCO TORRES** by herself and as a member of the **conjugal partnership** of which she is a member together with Mr. Daniel Fernandez Tardy, the conjugal partnership comprised by Daniel Fernandez Tardy and Mrs. Viviana Blanco Torres, Daniel Fernandez Tardy and Viviana Blanco Torres as legal Representatives of their minor children Andrea, Daniel and Viviana. | CIVIL NO.<br><br>COBRA, ERISA<br>PR Civil Code<br>Article 1802 |

Plaintiffs,

v.

Centennial Puerto Rico Operations Corp.,
Plan de Salud de Centennial de
Puerto Rico,
Y. Raquel Lopez Davila, in her personal
Capacity and as Manager of Compensation
and Benefits of Centennial Puerto Rico
Operations Corp.,
Marta Villanueva, in her personal capacity and
as Human Resources Representative of Centennial
Puerto Rico Operations, Corp.
Kenya Peluyera, in her personal capacity
and as Human Resources Representative of
Centennial Puerto Rico Operations, Corp.
Triple S, Inc.,
Massachussetts Mutual Life Insurance
Company,

Defendants.

1

## COMPLAINT

**TO THE HONORABLE COURT:**

**NOW COME** the plaintiffs to the case of caption through the undersigned attorneys and very respectfully allege and pray as follows.

### JURISDICTION AND VENUE

This Honorable Court has jurisdiction over this action pursuant to 28 USC Sec. 1331, federal question jurisdiction, inasmuch as the claims herein involve the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC Secs. 1001 et. seq., the Securities Exchange Act of 1934, 15 USC Sec. 78j(b). This court has supplemental jurisdiction over claims arising under the laws of the Commonwealth of Puerto Rico pursuant to 28 USC Sec. 1967, as those claims arise from a common nucleus of operative facts with the federal claims.

Venue in this Court is proper pursuant to 28 USC Sec. 1391 inasmuch as the defendants reside in this district and a substantial part of the events or omissions giving rise to the claim took place in the Commonwealth of Puerto Rico.

### PARIES

1. The parties to this case are:

a. Daniel Fernandez Tardy and his wife Viviana Blanco Torres who are married and both are members of a conjugal partnership (herein below referred to as 'Plaintiff' or 'Plaintiffs'). Both plaintiffs are citizens of the United States of America and residents of Puerto Rico. Plaintiffs are qualified participants of the medical plan of Centennial Puerto Rico Operations Corp. Fernandez is a qualified participant of the retirement plan of Centennial PR Operations Corp. Retirement Investment Plan.

b. Andrea Fernandez Blanco is 19 years old, the oldest daughter of the plaintiffs Fernandez Tardy and Blanco Torres and at the time the facts of the complaint took place was dependent of her father's financial support and medical plan.

c. Daniel Fernandez Blanco is 17 years old, the son of Fernandez Tardy and Blanco Torres and at the time the facts of the complaint took place was dependent of his father's financial support and medical plan.

d. Viviana Blanco Torres is 12 years old and is the youngest daughter of Fernandez Tardy and Blanco Torres and at the time the facts of the complaint

3

took place was dependent of her father's financial support and medical plan.

e. Centennial Puerto Rico Operations Corp., a corporation organized under the laws of the Commonwealth of Puerto Rico (herein below referred to as 'Centennial'). The business office for Centennial is San Roberto 996 Bo. Monacillos, Reparto Loyola, San Juan, Puerto Rico. Centennial is subject to the jurisdiction and venue of this Court.

f. Plan de Salud de Centennial de Puerto Rico is a medical plan provided by Centennial to its employees (herein below referred to as 'the plan').

g. Y. Raquel Lopez Davila was, at the time the facts of the complaint took place, the Manager of Compensation and Benefits of Centennial (herein below referred to as 'Lopez Davila').

h. Marta Villanueva is one of the Human Resources Representatives who work for Centennial (herein below referred to as 'Villanueva').

i. Kenya Peluyera is one of the Human Resources Representatives who work for Centennial (herein below referred to as 'Peluyera')

4

j. Triple S, Inc. is the claims administrator of the medical plan of Centennial Puerto Rico Operations Corp. mentioned above (herein below referred to as 'Triple S').

k. Massachussetts Mutual Life Insurance Company is a Springfield Massachussets company which manages the retirement plan of Centennial PR Operations Corp. Retirement Investment Plan (herein below referred to as 'Mass Mutual').

## FACTS

2.  Fernandez began to work for Centennial on or about January 22, 2000 at the sales operations division.

MEDICAL PLAN/COBRA

3.  In August 14, 2007 Fernandez began experiencing medical symptoms some of which were symptoms of acute stress and severe depression and others were later discovered to be symptoms of cancer.

4.  In September 2007 Fernandez was hospitalized for his emotional condition at an entity called INSPIRA. On or about that time Fernandez obtained information from Centennial, through its representative at human resources, Villanueva, which specified his available sick and vacations leave. The company also supplied him with a request for Family and Medical Leave

5

      (under the Family Medical Leave Act) and the company also gave him documents pertinent to the local chauffeurs insurance. It was not clear to Fernandez why they were instructing him about this insurance.

5. After Fernandez filled out the documents, including the chauffeurs insurance, he went to Centennial and handed the documents over to Villanueva. Villanueva told him that because he had so many vacations and sick leave, he should use those first and after he finished using those balances, they would request coverage under the chauffeurs insurance.

6. Fernandez was either on vacations or sick leave since August 14, 2007. At all times Fernandez supplied Centennial with the evidence of his medical condition in order to establish his reasons for being absent from work and maintain his employment status.

7. Fernandez periodically went to Centennial in person in order to provide the above mentioned medical evidence. When only several hours remained in his accumulated sick leave, Fernandez went to Centennial to inquire about the coverage under the chauffeurs insurance which Centennial had given him an application form. Centennial gave Fernandez the

documents which he allegedly had to provide to the doctors and return to Centennial and the Department of Labor.

8. Fernandez went to the Department of Labor to inquire regarding the chauffeurs insurance coverage. In March 14, 2008 Fernandez received a letter from the Department of Labor indicating that he was no elegible for the chauffeurs insurance which Centennial erroneously claimed for him.

9. The following Monday Fernandez went to the Department of Labor and Mr. Felix Vazquez explained that the correct insurance which covered him was called 'SINOT' by its Spanish acronym.

10. Thereafter Centennial finally gave Fernandez the documents pertinent to SINOT after he requested them. SINOT is an insurance for non-occupational temporary disability.

11. Fernandez was later (November 2007) discovered to be suffering of cancer in his cervical bone marrow and received the pertinent medical treatment which has been ongoing.

12. In January 11, 2008 Fernandez met with a human resources representative at Centennial, Kenya Peluyera and gave her the oncologist documents

regarding the absences from work for the period of January 11, 2008 to April 11, 2008. He specifically inquired if there was anything he had to do or know regarding his benefits, the salaries continuation insurance and his employment at Centennial and was told by Peluyera that 'everything was all right'.

13. In February 1, 2008 Fernandez obtained a prescription from his oncologist and when he went to purchase the medicine on February 5, 2008 the pharmacy notified him that he had no medical plan.

14. Fernandez went to Centennial on February 6, 2008, and the same human resources representative, Peluyera, told him that he had to pay the medical plan through something called COBRA, although he was still an employee of Centennial. He was not notified in advance in violation of the pertinent laws and regulations.

15. Because of his catastrophic medical condition Fernandez was forced to go ahead and ask his extended family for money in order to immediately pay his medical plan through the COBRA's extension as he was told to by Peluyera, without any questioning, but Fernandez was still an employee and he understood himself to be an employee because the

8

human resources representative did not tell him otherwise when he met with her in January 11, 2008.

16. As a matter of fact, in January 9, 2008 and in August 8, 2008 Fernandez was given by Centennial two letters of active employment.

17. In January 22, 2008 Centennial gave Fernandez a telephone plan on the status of 'employee in license'.

18. Fernandez's daughter Andrea was awarded with a grant given by Centennial for college education for the academic year 2007-2008. The same grant was given to her in August 25, 2008, as daughter of an employee of Centennial.

19. Fernandez was effectively dismissed from employment on October 10, 2008.

20. Fernandez has been paying for his medical plan through the COBRA extension from February 2008 to present although he was terminated from employment on October 2008.

21. By the time he was dismissed, which is when he should have begun to pay for the COBRA extension for his medical plan Fernandez had already paid eight months while still an employee of Centennial.

SALARY CONTINUATION

9

22. During the meetings Fernandez had with the mentioned personnel from Centennial Human Resources not even once did they instruct Fernandez about the salaries continuation insurance coverage to which he is entitled.

23. Centennial forced Fernandez and his family, the rest of the plaintiffs herein, to suffer unnecessarily the economic pressures of not enjoying the salary continuation insurance at a time when it was urgent for their sustenance because of Fernandez illness and inability to work.

24. Plaintiff Blanco Torres specifically inquired on October 24, 2007 as what other insurances were applicable to Fernandez situation and she never got an answer from Centennial.

25. Centennial has never been clear regarding the accumulated benefits by Fernandez. As a matter of fact Centennial has also not complied with the employee manual is this aspect.

ERISA

26. On or about November 2007 Fernandez requested information regarding an early distribution of his retirement plan at Centennial because of the

10

difficult financial condition he was going through together with his family.

27. On November 19, 2007 Fernandez received a letter from Mass Mutual requiring him to fill out an Application for Hardship Withdrawal.

28. At the time Fernandez originally applied for the hardship distribution he had accumulated approximately $16,000.00.

29. Fernandez complied with every requirement made by Mass Mutual but Mass Mutual did not respond until May 2008 when they requested yet again the same information which Fernandez had already submitted.

30. Fernandez complied with the second request by Mass Mutual on July 30, 2008.

31. By September 2008 Mass Mutual had not responded and Fernandez was facing active foreclosure in his home because of the extreme financial hardship.

32. To this date Fenandez received only approximately $9,700.00 of the original amount he had when he first requested the hardship distribution.

33. Had it not been for Mass Mutual's incompetence in handling Fernandez's request for hardship distribution he would not have lost approximately $3,000.00 which he now does not have in his

retirement plan and which he and his family desperately need.

34. Since October 2, 2008 Fernandez requested directly from Centennial in person the Summary Plan Description and Centennial refused to provide him with such information through its representative by the name of Villanueva. On five occasions Centennial denied to Fernandez such documents.

35. In December 29, 2008 Fernandez requested via certified mail the same documents requested in October 2, 2008 and also requested other information regarding SINOT, long term disability insurance, salaries continuation insurance, liquidation of vacations and sick leave, other leaves accumulated by him. This information had been requested in person and denied by Villanueva from Centennial.

### COUNT ONE

36. Plaintiffs repeat the allegations of paragraphs 1-35 above as if set forth at length herein.

37. At all times hereto Villanueva, and Peluyera worked under the supervision of Y. Raquel Lopez Davila and all of them worked for Centennial.

38. Villanueva and Peluyera, working under the supervision of Y. Raquel Lopez Davila, caused

12

damages to the plaintiffs by making false representations to Fernandez regarding his employment status and benefits all in violation of ERISA and the COBRA dispositions therein.

39. The above named defendants deceived plaintiffs and caused severe damages, anguish and pain.

40. The above named defendants failed to discharge their duties with respect to Fernandez and the medical plan with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

41. Triple S, Inc. was negligent in that it also did not notify in due time with proper anticipation to Fernandez, in compliance with the COBRA dispositions, of the cancellation of his medical plan in due time and he had to find out upon trying, as usual, to have a prescription at the pharmacy.

42. Triple S, Inc. failed to discharge their duties with respect to Fernandez and the medical plan with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such

matters would use in the conduct of an enterprise of like character and with like aims.

43. Plaintiffs should be reimbursed for the amounts of money Fernandez has been paying for the medical plan under the COBRA extension from February until October 2008.

44. Plaintiffs should also be entitled to have the COBRA extension beginning on October 2008 and not from February 2008.

## COUNT TWO

45. Plaintiffs repeat the allegations of paragraphs 1-41 above as if set forth at length herein.

46. Plaintiffs repeat the allegations of paragraphs 1-35 above as if set forth at length herein.

47. At all times hereto Villanueva, and Peluyera worked under the supervision of Y. Raquel Lopez Davila and all of them worked for Centennial.

48. Villanueva and Peluyera, working under the supervision of Y. Raquel Lopez Davila, and all of them for Centennial, caused damages to the plaintiffs by making false representations to Fernandez regarding his employment status and benefits all in violation of ERISA and the COBRA dispositions therein

49. The above named defendants deceived plaintiffs and caused severe damages, anguish and pain. They failed to discharge their duties with respect to Fernandez and his employment status and benefits with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

50. Plaintiffs should be entitled to have SINOT coverage for the period to which they were supposed to have it but did not, all because of the false representations of Villanueva, Peluyera and Y. Raquel Lopez Davila.

## COUNT THREE

51. Plaintiffs repeat the allegations of paragraphs 1-47 above as if set forth at length herein.

52. Plaintiffs repeat the allegations of paragraphs 1-35 above as if set forth at length herein.

53. At all times hereto Villanueva, and Peluyera worked under the supervision of Y. Raquel Lopez Davila and all of them worked for Centennial.

54. Villanueva and Peluyera, working under the supervision of Y. Raquel Lopez Davila, and all of

15

them for Centennial, caused damages to the plaintiffs by making false representations to Fernandez regarding his employment status and benefits all in violation of ERISA and the COBRA dispositions therein.

55. The above named defendants deceived plaintiffs and caused severe damages, anguish and pain. They failed to discharge their duties with respect to Fernandez and his employment status and benefits with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

56. Plaintiffs should be given the salary continuation insurance coverage as it is applicable to Fernandez from the moment such claim should have been made on his behalf by Centennial.

### COUNT FOUR

57. Plaintiffs repeat the allegations of paragraphs 1-53 above as if set forth at length herein.

58. At all times relevant hereto Fernandez was a participant of a 401(k) plan administered for Centennial employees by Mass Mutual.

16

59. At all times relevant hereto Mass Mutual breached its duty to plaintiff Fernandez when it negligently mishandled Fernandez application for a hardship distribution when he needed it the most.

60. Mass Mutual negligently and carelessly subjected Fernandez to a loss of his accumulated moneys in the retirement plan when Mass Mutual required Fernandez to submit the same information and documents in more than two occasions unnecessarily consuming more time than needed and making him repeat the same administrative steps more than twice.

61. Defendant Mass Mutual failed to discharge its duties with respect to Fernandez and his 401(k) with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

62. Fernandez should receive the amount he had accumulated in his 401(k) plan at the time he completed the steps for the hardship distribution for the first time and he should no be responsible for the loss the plan suffered during the time Mass

Mutual negligently and carelessly took to process the request.

### COUNT FIVE

63. Plaintiffs repeat the allegations of paragraphs 1-58 above as if set forth at length herein.

64. Plaintiff Fernandez as well as each of the members of his immediate family, all plaintiffs herein, suffered substantial emotional damages, pain and anguish because of the negligent acts and omissions of defendants.

65. The plaintiffs had to endure the fact that Fernandez was discovered to be suffering of cancer in his bone marrow and at the same time had to suffer the result of the negligent acts and omissions of all the defendants herein as described above.

66. Plaintiffs are entitled to receive proper compensation for the damages suffered under the Civil Code of Puerto Rico, article 1802, 31 LPRA Sec. 5141.

67. All of the defendants failed to discharge their duties with respect to Fernandez and his immediate family regarding and Fernandez employment status and benefits with care, skill, prudence, and diligence under the circumstances then prevailing that a

prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

68. Plaintffs pray for relief under such article in the amount of eight hundred thousand dollars ($800,000.00) as described below:

   a. $300,000.00 for Mr. Daniel Fernandez Tardy

   b. $200,000.00 for Mrs. Viviana Blanco Torres

   c. $100,000.00 for Andrea Fernandez Blanco

   d. $100,000.00 for Daniel Fernandez Blanco

   e. $100.000.00 for Viviana Fernandez Blanco

WHEREFORE plaintiffs pray for an order of relief as described above, together with attorneys fees, costs and any other relief this Court may find just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.

In San Juan, Puerto Rico, this 31th day of july 2009.

GONZALEZ LOPEZ & LOPEZ ADAMES
1126 Ashford Ave. Suite C-10
The Diplomat Condominium
Condado PR 00907
Tel. 787-724-8212
Fax 787-722-8289
lopmarie@aol.com

19

<u>gonzalez4@prtc.net</u>
<u>s/Marie Elsie Lopez Adames</u>
USDC NO. 208214